# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

DELMAS SEXTON II              )

                                )

        Plaintiff,           )

                                  )

        v.                   )       CAUSE NO. 1:03-CV-291-TS

                                  )

JANE ANN RUNYON, Clerk,     )

Jay Circuit and Superior Courts,    )

                                  )

        Defendant.        )

## OPINION AND ORDER

The Plaintiff, Delmas Sexton II, sued the Clerk of the Jay Circuit and Superior Courts, Jane Ann Runyon, under 42 U.S.C. § 1983 alleging that she divulged confidential information to a third party in violation of Indiana Code § 5-2-9-7 and his constitutional right to privacy. The Defendant moved for summary judgment [DE 32] on October 13, 2004.The Plaintiff did not respond to the Motion and on January 7, 2005, the Court granted the Defendant's Motion for Summary Judgment on the § 1983 claim and the Clerk entered judgment in favor of the Defendant. On January 19, 2005, the Plaintiff filed a Verified Motion for Relief from Judgment or Order, which the Court granted on February 10, 2005, reopening the case to give the Plaintiff an opportunity to respond to the Defendant's Motion for Summary Judgment.

Although the Plaintiff's case has been reopened, and additional briefing has been presented, the outcome of the Plaintiff's case remains the same. The Defendant is entitled to judgment as a matter of law because the Plaintiff has not established the violation of a constitutional right.

## PROCEDURAL BACKGROUND

On June 30, 2003, the Plaintiff filed a *pro se* Complaint against the Defendant in the Jay Superior Court in Indiana. The Plaintiff alleged that the Defendant violated Indiana Code § 5-2-9-7 and 42 U.S.C. § 1983 when she disseminated confidential information, after he had filed it with the Defendant clerk as an attachment to his petitions for protective orders.

On August 4, 2003, the Defendant filed a Petition for Removal with this Court and a Notice of Removal with the Jay Superior Court. The Defendant indicated that her Petition was filed pursuant to 28 U.S.C. § 1446 and the Court's federal question jurisdiction.

On August 26, 2003, the Defendant filed her Answer to Complaint for Damages in this Court and requested a trial by jury. On September 12, 2003, the Court entered its Memorandum and Order directing the Defendant "to show cause . . . why this complaint should not be remanded to state court for failure to state specifically which constitutional right the petition for removal is based."  On September 26, 2003, the Defendant's Response to the September 12, 2003, Order to Show Cause was filed, in which the Defendant submitted that the Plaintiff's claim was based upon the right to privacy guaranteed by the due process clause of the Fourteenth Amendment.

On October 8, 2003, the Court granted the Defendant's Petition for Removal. On October 10, 2003, the Plaintiff requested appointment of counsel. The Court took the Plaintiff's motion under advisement and ordered the Plaintiff to return a questionnaire provided by the Court within thirty days. The Plaintiff did not return the questionnaire.

On November 25, 2003, the Court screened the case under 28 U.S.C. § 1915A and allowed the Plaintiff to proceed against the Defendant in her individual capacity for damages. On October 13, 2004, the Defendant filed her Motion for Summary Judgment and Notice to the Plaintiff, which met the requirements of *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982). The Plaintiff did not file

a response. On January 7, 2005 the Court entered an Order for Summary Judgment as to the federal claim.

On January 19, 2005, after receiving notice of this order, the Plaintiff filed a Motion for Relief from Judgment or Order. The Plaintiff argued that he had never received notice of the Motion for Summary Judgment and alleged that this lack of notice was caused by the Defendant's misconduct in attempting to attain a tactical advantage for summary judgment. On January 31, 2005, the Defendant responded, asserting that she had satisfied all service obligations and arguing that the Plaintiff had no meritorious defense to the Motion for Summary Judgment.

On February 10, 2005, the Court granted the Motion to Set Aside Judgment, vacating the January 7 Order for Summary Judgment. In vacating the prior order for summary judgment, the Court found that the Plaintiff's lack of notice constituted an instance of "excusable neglect," and that under Seventh Circuit jurisprudence he would be afforded the opportunity to respond to the Motion for Summary Judgment. However, the Court rejected the Plaintiff's claim that the Defendant had engaged in misconduct, as the Defendant had attempted service of the motion for summary judgment on three occasions, including at the correctional facility the Plaintiff had provided as his last address.

On February 22, 2005, the Plaintiff filed a Motion for Extension of Time to File Response to Summary Judgment, which was granted on February 23, 2005. On April 14, 2005, the Plaintiff filed a Verified Motion to Enlarge Time to Respond in Opposition to Defendant's Motion for Summary Judgment. On April 18, 2005, the Court granted this Extension with the stipulation that no further extension would be granted.

On April 29, 2005, the Plaintiff filed a Response to Defendant's Motion for Summary Judgment. The Plaintiff simultaneously filed a Brief in support of his Response, and accompanying

3

this brief were a Verified Affidavit and voluminous appendices. On May 16, 2005, the Defendant filed a Reply to Response to Motion for Summary Judgment, accompanied with a Motion to Strike Plaintiff's Affidavits and Appendices [DE 63].

On May 26, 2005, the Plaintiff requested that the Court defer ruling on the Motion to Strike because he had not received timely service of the Motion to Strike, which he attributed to misconduct of the Defendant. On May 31, 2005, the Defendant responded, presenting evidence that the delay in service was not the result of any wrongdoing by the Defendant and that the Plaintiff had not been prejudiced by the delay. On May 31, 2005, the Plaintiff filed a response to the Motion to Strike, in which he also requested that the Court stay the proceedings and conduct a hearing on his claim that his deposition, specifically his errata sheet, had been removed or tampered with. On June 3, 2005, the Defendant responded, asserting that the Plaintiff manufactured an additional errata sheet that was not submitted to the court reporter. The Defendant presented an affidavit from Court Reporter Charles D. Holm, who recorded Sexton's May 24, 2004, deposition. Reporter Holm testified that the errata sheet most recently provided by the Plaintiff in response to the Defendant's motion for summary judgment—which includes the allegations that he overheard the Defendant admit the existence of a conspiracy—was not submitted at the time of the Plaintiff's other errata sheets. Additionally, the Defendant directed the court to circumstantial evidence (including the sequence of the corrections to the Plaintiff's deposition, the sheets signed and dated by the Plaintiff at the time the original errata sheets were filed, and the apparent use of a different pen on the disputed errata sheet) that suggested that the disputed errata sheet was most likely fabricated.

On June 3, 2005, the Court denied the Plaintiff's motion to defer ruling as moot. The Court also denied the Plaintiff's motion to stay, but indicated that it would consider the issues presented

by the motion in its determination of whether summary judgment was appropriate.

On June 15, 2005, the Plaintiff filed a reply in support of his motion to defer this ruling, which the Court had recently declared moot. On June 22, 2005, the Plaintiff filed corrections to his motion to stay and his response to the Defendant's request for sanctions. Finally, on July 12, 2005, the Plaintiff filed a motion for leave to amend his response to the Defendant's Motion for Summary Judgment [DE 75], as the Plaintiff's original response brief contained sequencing and labeling errors.

### SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are

5

irrelevant or unnecessary will not be counted.'" *Abrams v. Walker*, 307 F.3d 650, 653 (7th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe,* 42 F.3d at 443. Under Northern District of Indiana Local Rule 56.1(b), the Court is to assume that the facts claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent such facts are controverted in a "Statement of Genuine Issues" filed in opposition to the motion and supported by admissible evidence.

## MOTION TO STRIKE

### A. Background

On June 30, 2003, the Plaintiff sued Defendant Jane Ann Runyon for providing confidential forms, which contained his address and social security number, to third parties and for allowing those parties to have *ex parte* communication with the judge who was scheduled to hear his protective order actions.

On May 24, 2004, the Plaintiff was deposed and stated that he did not have personal knowledge of the Defendant's involvement and did not know if she personally sent the confidential

forms to the third parties. On October 13, 2004, the Defendant moved for summary judgment. The Defendant provided a Statement of Material Facts that relied on the Plaintiff's Complaint allegations and deposition testimony. On January 7, 2005, the Court issued a Memorandum and Order granting the Defendant's Motion for Summary Judgment on the Plaintiff's federal claim and remanding the state law claim to state court.

On January 19, 2005, the Plaintiff filed a Motion for Relief from Judgment. In addition to explaining that he did not receive the Defendant's Motion for Summary Judgment, he also addressed the merits of the Court's Order granting summary judgment for the Defendant. He challenged only the Court's legal conclusions, not its findings of facts. He argued that Indiana statute created a privacy right that was protected by the federal constitution and that the Defendant was not entitled to qualified immunity. On February 10, 2005, the case was reopened to allow the Plaintiff an opportunity to respond to the Motion for Summary Judgment.

After obtaining extensions to respond, the Plaintiff filed his memorandum in opposition to the Defendant's Motion for Summary Judgment. The Plaintiff also filed an Affidavit and a five-volume Appendix. In his brief, he argued that the Defendant's dissemination of his confidential information violated his confidentiality rights established pursuant to Indiana Code § 5-2-9-7 and was part of a conspiracy between the Defendant and Judge Brian D. Hutchison to deny him his right to a fair and impartial hearing. (Pf.'s Resp. at 1.) The Plaintiff also made numerous allegations unrelated to the purported disclosure of his address and social security number. The Plaintiff contended that his Affidavit and Appendix show a conspiracy by public officials to wrongfully convict the Plaintiff, to cover-up the convictions, and to deny him the right to petition for redress in his criminal causes as well as his protective order cases. The persons named in the conspiracy are

7

officials or judges of the Jay Circuit Court, the Jay County Prosecutors' Office, the Jay County Clerk's Office, the Indiana Attorney General's Office, the Indiana Supreme Court, the Indiana Supreme Court Disciplinary Commission, the Allen Superior Court, and the Allen County Prosecutor's Office. The Plaintiff also included a lengthy narrative of the proceedings in his criminal cases and in this case. He did not cite to specific pages of the Appendix or his Affidavit, but designated a "detailed reading of the Affidavit and all five (5) Appendix Volumes in toto and incorporates the same in their entirety by reference." (Pf.'s Resp. at 4.)

**B. Local Rule 56.1**

Before addressing the specific claims the Plaintiff asserts in his Response, the Court notes that the Plaintiff's statement of facts does not comply with Northern District of Indiana Local Rule 56.1(a). This Local Rule requires that the response include a "Statement of Genuine Issues" that sets forth, "with appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence," the material facts that create genuine issues to be litigated. N.D. Ind. L.R. 56.1(a). District courts are not obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions. *Waldridge v. Am. Hoechst Corp.* 24 F.3d 918, 922 (7th Cir. 1994). Application of Local Rule 56.1 has been upheld by the Seventh Circuit in *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 1000 (7th Cir.1992).

Here, the sheer number of pages in the Plaintiff's appendices and the nature of the allegations, including complex, extensive conspiracies, make accurate and appropriate citations essential to the Court's adjudication. While such citations assist the parties in sharpening the factual

disputes of the case, they are particularly helpful to the Court, which "often cannot afford to spend the time combing the record to locate the relevant information." *Waldridge*, 24 F.3d at 923–24; *see also Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir.1996) ("It is not our function to scour the record in search of evidence to defeat a motion for summary judgment; we rely on the nonmoving party to identify with reasonable particularity the evidence upon which he relies."). The inadequacy of the Plaintiff's statement of facts and his bald designation of a "detailed reading" of the entirety of his submissions are sufficient reason for the Court to strictly enforce Rule 56.1 and reject these documents, except where the Plaintiff provides specific citations in the text of his response brief.[1]

## C. Plaintiff's Conspiracy Claims

In his response to the Defendant's motion for Summary Judgment, the Plaintiff asserts that, on May 28, 2004,  he overheard the Defendant telling an unidentified person that she was involved in a conspiracy with Judge Hutchison and others. During this conversation, the Defendant also stated that she was told by Judge Hutchison to send the confidential forms to the third parties, and, finally, she destroyed any evidence of premeditation in arranging the "fake" hearing in which Judge Hutchison had predetermined that he would deny the Plaintiff's motions for protective orders. (Pf.'s Resp. at 9.)

The Defendant has moved to strike the Plaintiff's Affidavit and Appendices because of the late attempt to amend his Complaint, the incredible nature of the new claims, and the prejudice that

---

[1]Although the Plaintiff does not include any citations in the Statement of Facts, citations are provided in his argument sections. To the extent that these cited facts do not involve allegations that are unrelated to the Complaint, *see infra*, the Court will consider them.

an amended complaint would cause to the Defendant. The Defendant would also like the Court to strike the overheard conversation of May 28, 2004, because the Plaintiff's Affidavit and briefing on this matter contradict his earlier deposition testimony, including his errata sheet changes, which were made after the purported conversation.[2]

Upon reviewing the Plaintiff's allegations in his Response to summary judgment, the Court concludes that the Plaintiff's extensive conspiracy allegations are not related to his Complaint. While the Complaint references a "conspiracy to murder [the] Plaintiff," which prompted the Plaintiff's original request for protective orders against his former girlfriend, Michelle Berghoff, and police officer Mark Walters, these allegations do not implicate or pertain to the Defendant and the claim that she disclosed confidential information. In fact, the Plaintiff distinguishes the role of the Defendant by repeatedly and clearly alleging that the Plaintiff was negligent in releasing his personal information. While the Plaintiff's legal characterization of the case in his Complaint is not dispositive, the Defendant was not given notice that the Plaintiff was pursuing a vast conspiracy claim in this suit. The Plaintiff's allegation that the Defendant "allowed" the judge to have an *ex parte* communication with the parties against whom he sought protective orders and that the Defendant acted with a culpable mens rea at the time is the closest thing to a conspiracy claim

_____

[2]The facts surrounding this overheard conversation, as reported by the Plaintiff, has created an additional flurry of allegations and briefs. The Defendant challenges the Plaintiff's veracity in claiming such a conversation ever occurred, and the Defendant questions why the Plaintiff never corrected his Deposition or so much as mentioned this damning conversation prior to this response to the impending summary judgment. The Plaintiff in turn alleges that the Defendant and the court reporter present for his deposition were complicit in destroying an errata sheet from his deposition.

In response to the Defendant's assertion that the errata appeared fabricated, the Plaintiff contends that the disputed errata sheet was submitted at the same time as the others. The Plaintiff accuses the court reporter of colluding with the Defendant's counsel to keep this information from the Record.

Determining the status of the Plaintiff's deposition and the truthfulness behind these varying accusations is beyond the scope of this summary judgment proceeding. Thus, while the Court acknowledges the controversy surrounding these allegations, it sets the dispute aside for the purpose of this Opinion and Order and assumes that the Plaintiff overheard the Defendant's conversation.

involving the Defendant. However, a conspiracy claim against the Defendant is not reasonably inferred from the Complaint.

It is improper as a matter of law for the Plaintiff to amend his Complaint in response to a Motion for Summary Judgment. *Pritchard v. Rainfair*, 945 F.2d 185, 191 (7th Cir. 1991); *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989). Accordingly, the Court will not construe these new theories for relief as amendments to the Plaintiff's Complaint, and even if the Plaintiff desired such an amendment, the time to amend has passed. On February 18, 2004, the Court's Scheduling Order gave the Plaintiff a June 14, 2004, deadline for filing any amendments to his pleading. The conspiracy claims were not raised until the Plaintiff's Response to Defendant's Motion for Summary Judgment was filed on April 29, 2005.

Furthermore, it is inappropriate for the Court to allow amendments when, *inter alia*, there has been undue delay in bringing the new claims. *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001); *Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir.1992). Here, assuming the veracity of the Plaintiff's allegations contained in his latest Affidavit and Appendices, there has certainly been undue delay in bringing the complex conspiracy claims before the Court. The Plaintiff states that on May 28, 2004, he overheard statements by the Defendant indicating that she was involved in illicit disclosure of the Plaintiff's private information and a conspiracy against the Plaintiff (DE 61, Appendix Vol. V, 321–22). But, the Plaintiff's filings of April 29, 2005, almost a year later, were the first time he raised these allegations.[3]

The Court grants the Defendant's Motion to Strike to the extent that it seeks to introduce new

---

[3]Again, assuming that the Plaintiff did in fact file an errata sheet and affidavit on June 12, 2004, that included these allegations of an overheard conversation involving the Defendant—effectively correcting his May 24, 2004, deposition—the Plaintiff made no effort to raise this matter before the Court prior to his Response to Summary Judgment on April 29, 2005.

conspiracy claims into this cause. The Motion to Strike is denied as moot insofar as it relates to the authenticity of the challenged errata sheet to the Plaintiff's deposition, as this Opinion and Order disposes of this case without the need for resolving this dispute. Finally, the Motion to Strike is denied as to any claims, supported by citations to the record, that specifically involve the Defendant's disclosure of personal information or the *ex parte* communication, both of which were alleged in the original Complaint.

### STATEMENT OF FACTS[4]

The Plaintiff, believing that his former girlfriend, Michelle Berghoff, and Fort Wayne Police Officer Mark Walters were conspiring to kill him, filed two petitions for protective orders with the Jay County Court. The Plaintiff attached a "Confidential Form" to each petition, which provides that the information being provided "is confidential under Indiana law pursuant to I.C. § 5-2-9-7, and it may not be released." On the Form, the Plaintiff provided his social security number and several telephone numbers and provided 215 W. Water Street in Portland, Indiana, as his home address. The Plaintiff was actually incarcerated at the Miami Correctional Facility when he filed the petitions for protective orders, and Berghoff and the officer would not have had access to him. He stated in his deposition that he filed the petitions because he wanted to be protected when he was released from jail.

On December 21, 2002, Judge Hutchison held a hearing on the Plaintiff's petitions. The

---

[4]The Statement of Facts is largely a restatement of the facts from the January 7, 2005, Order for Summary Judgment that was later vacated. The Plaintiff in his Response to the Motion for Summary Judgment offered numerous additional facts pertaining to an alleged conspiracy involving the Defendant and numerous others. These additional facts, as indicated above, are only included to the extent that they relate to the original Complaint allegations.

Plaintiff represented himself at the hearing. He testified and had an opportunity to question Berghoff and the police officer. In a ruling from the bench, Judge Hutchison denied the Plaintiff's petitions.

The Plaintiff contends that he later learned that Berghoff had submitted a lengthy *ex parte* writing to Judge Hutchison before the hearing. This letter from Berghoff to Judge Hutchison included numerous allegations of prior bad acts of the Plaintiff, declared that Berghoff feared for her future safety because of the Plaintiff's instability, and implored the Judge to deny the protective orders on the grounds that the Plaintiff would ultimately use them as a manipulative advantage.

On the basis of certain information Berghoff included in her letter to Judge Hutchison, namely the residential address in Portland, Indiana, that the Plaintiff designated as his home address, the Plaintiff believes that either the Defendant or someone else in the clerk's office provided Berghoff the Confidential Form he was required to submit with his request for protective orders. The Plaintiff also believes, based on his recollection of a conversation overheard at the Jay County Courthouse, that the Defendant disclosed the information per the presiding judge's wishes. For the purpose of this Opinion and Order, the Court accepts that occurrence as true.

The Plaintiff acknowledges that his social security number can be obtained from other sources and that the police officer would have had access to his criminal files, which contain both his address and social security number. However, he asserts that the criminal file would not have contained the 215 W. Water Street address, which belonged to a friend.

The Plaintiff alleges that the Defendant acted negligently because she had a duty under Indiana law not to release the information contained in the Confidential Form and that she did not, therefore, do her job properly. The Plaintiff also alleges that the release of his personal information, such as his address, caused him substantial fear and concern.

13

**DISCUSSION**

To set forth a claim under § 1983, the Plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Trautvetter v. Quick*, 916 F.2d 1140, 1148 (7th Cir. 1990) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988). The Defendant contends that the disclosure of the Plaintiff's address and social security number does not constitute the violation of a constitutional or federal right. The Defendant also asserts that she is entitled to qualified immunity.

Qualified immunity protects public officials from civil suit based on their discretionary functions except where that conduct violated "clearly established" law. *Sherman v. Four County Counseling Ctr.*, 987 F.2d 397, 407 (7th Cir.1993). In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court explained the two-step procedure federal courts must use in considering a qualified immunity defense. *Id.* at 200. "[T]he first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation is established, the question whether the right was clearly established must be considered . . . ." *Id*. Thus, the threshold question is whether the facts alleged here, taken in the light most favorable to the Plaintiff, show that the Defendant's conduct violated the Plaintiff's constitutional rights. *Id.* at 201. The Court concludes, as it did in its January 7, 2005, Order, that the answer is no.

"State law violations do not form the basis for imposing § 1983 liability." *Windle v. City of Marion*, 321 F.3d 658, 662 (7th Cir. 2003). Therefore, the Plaintiff's argument that the Defendant's dissemination of the Plaintiff's address and social security number was a violation of Indiana

Code § 5-2-9-7[5] does not advance the Plaintiff's § 1983 action. The Plaintiff's argument that Indiana state law created a liberty and property interest in the privacy of his address and social security number, which should be upheld as a matter of federal law, fares no better. The Plaintiff cites to cases addressing the adjudication of property interests in ongoing employment to buttress his claim, and in the process attempts to cast his privacy claim as a type of property right.

## A. Property Rights in Personal Information

"[T]he property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571–72 (1972). "Yet, while the Court has eschewed rigid or formalistic limitations on the protection of procedural due process, it has at the same time observed certain boundaries. For the words 'liberty' and 'property' in the Due Process Clause of the Fourteenth Amendment must be given some meaning." *Id.* at 572. The courts have utilized this wider understanding of property rights in addressing wrongful termination and the "property" right to certain employment. *See, e.g.*, *Baird v. Bd. of Educ. for Warren Cmty. Unit Sch. Dist. No. 205*, 389 F.3d 685, 690 (7th Cir. 2004) ("The

---

[5]The statute provides:
(a) Any information:
    (1) in a uniform statewide confidential form or any part of a confidential form prescribed by the division of state court administration that must be filed with a protective order, no contact order, or workplace violence restraining order; or
    (2) otherwise acquired concerning a protected person;
  is confidential and may not be divulged to any respondent or defendant.
(b) Information described in subsection (a) may only be used by:

    (1) a court;
    (2) a sheriff;
    (3) another law enforcement agency;
    (4) a prosecuting attorney; or
    (5) a court clerk;
  to comply with a law concerning the distribution of the information.

Supreme Court has long recognized that a public employee can have a constitutionally protected property interest in continued employment; such interests 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . .'" (quoting *Roth*, 408 U.S. at 577)). However, in this case the Plaintiff attempts to extend the meaning of "property" to an extent unrecognized by the law. Though the law has considered various privacy interests in personal information, *infra*, the law does not frame these protections as property rights. In short, the property right cases invoked by the Plaintiff are not analogous to the privacy interests the Plaintiff seeks to protect, and the existence of a state law making his petition for a protective order confidential does not create a constitutionally-protected right.

**B. The Right to Privacy**

With respect to federal law, the Plaintiff alleges a violation of Fourteenth Amendment privacy and substantive due process rights insofar as the asserted violation of state law, disclosure of the confidential protective order forms, also violated these constitutional provisions.

To the extent a federal constitutional right of privacy against the disclosure of personal matters exists, it has not been extended to the information disclosed in this case, the Plaintiff's address and social security number. In *Whalen v. Roe*, 429 U.S. 589, 598–600, 605–06 (1977), the Supreme Court vaguely implied a substantive due process right in government compulsion of a person's medical records. The Court held that the existence and extent of constitutional protections for disclosure of personal matters depends on the type of information involved and the reasonable expectation that the information would remain confidential. *Whalen*, 429 U.S. at 604; *Nixon v. Admin. of Gen. Servs.*, 433 U.S. 425, 465 (1977). In *Anderson v. Romero*, 72 F.3d 518, 522 (7th Cir.

16

1995), the Seventh Circuit recognized that a number of lower federal courts, building on *Whalen* and *Nixon*, have recognized a qualified constitutional right to the confidentiality of medical records and medical communications. *See also Denius v. Dunlap*, 209 F.3d 944, 957–58 (7th Cir. 2000) (noting Seventh Circuit law holding that medical information may be a form of protected confidential information because of its intimate and personal nature). More recently, the Seventh Circuit has recognized that the constitutional right of privacy in confidential information covers some financial disclosures. *Denius*, 209 F.3d at 958.

> Because confidential financial information may implicate substantial privacy concerns and impact other fundamental rights, we agree with the overwhelming majority of our sister circuits that some types of financial information involve the degree and kind of confidentiality that is entitled to a measure of protection under the federal constitutional right of privacy.

*Id.*

Here, the type of information involved, the Plaintiff's address and social security number, does not involve the degree and kind of confidentiality entitled to protection under the Constitution. It is not information of an intimate or personal nature. An address is readily provided to, and available from, various sources. The Plaintiff also admitted that his social security number was available, to one of the involved parties, from his criminal records. Moreover, while a social security number is often protected from disclosure and is not disseminated to the public, the contention that disclosure of a social security number violates the right to privacy has been "consistently rejected." *See McElrath v. Califano*, 615 F.2d 434, 441 (7th Cir. 1980) (holding that disclosure of social security number as a condition of eligibility for government financial assistance did not violate plaintiff's right to privacy) (citing *Cantor v. Supreme Ct. of Penn.*, 353 F. Supp. 1307, 1321–22 (E.D. Pa. 1973)); *Conant v. Hill*, 326 F. Supp. 25, 26 (E.D. Va. 1971)); *but see Arakawa v. Sakata*,

17

133 F. Supp. 2d 1223, 1226–29 (D. Hi. 2001) (considering "the voluminous and largely ambiguous case law on the subject" of privacy rights in confidential information and concluding that the public disclosure of motorist's social security number violated constitutional privacy rights).

The Plaintiff directs the Court to a distinction in these cases insofar as the Seventh Circuit has only addressed the release of social security numbers to official agencies. The Plaintiff likens his case to *Arakawa*, *id.*, which he states reflects one court's concern with social security numbers being released to the general public. Though it is possible the law in our jurisdiction may develop to reflect heightened concern with the release of social security numbers, that is not the state of the law as the Court is to apply it today.

The Plaintiff directs the court to Indiana Code § 34-26-5-1 and § 5-2-9-7. He states that the "Court is urged and directed to take judicial notice of the plain and simple reading" of these statutes, and asserts that the statutes create a substantive right of privacy in his social security number and address. (Pf.'s Resp. at 14–15.) The Plaintiff does not direct the Court to any caselaw applying these statutes or supporting the assertion that Indiana has provided substantive privacy protections to this information that would generate Constitutional protection. The Court's independent inquiry yields no situations in which the cited statutes have been invoked to prevent the release of addresses or similar information on the grounds that one has a fundamental privacy right in this information. Certainly the legislature intended to protect the safety of those threatened with domestic violence, and that important goal is not to be ignored or disputed. However, it is equally clear that an address, in itself, is not the type of information that receives constitutional privacy protection.

The Plaintiff's privacy claim fails as a matter of law and the Defendant is entitled to summary judgment.

**C. Due Process**

The Plaintiff argues that the release of his address and social security number, along with the Defendant having allowed Berghoff to conduct an *ex parte* communication with Judge Hutchison, violated his due process rights.[6]

The Plaintiff argues alternate reasons for how his due process rights were violated. First, the Plaintiff argues that he has a substantive due process right in maintaining privacy and confidentiality in his address.[7] "Only laws that affect 'fundamental rights' come within the purview of [the substantive due process] doctrine." *Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1129 (7th Cir. 1995). As discussed above, there is no constitutional right to privacy in one's address. Accordingly, any assertion that confidentiality in one's address is so fundamental as to receive substantive due process protection is not well taken.

Second, the Plaintiff argues that the *ex parte* communication between Berghoff and Judge

---

[6]Whether the Court should exercise jurisdiction over this claim is unclear, as it is apparent from the Plaintiff's submissions that he has pursued litigation over the existence of the alleged *ex parte* communication between Berghoff and Judge Hutchison in state court. (Appx. to Pf.'s Resp. to Sum. J. at Vol. III, 10–15, 104–07) (showing that the Plaintiff petitioned the court for relief in Ind. App. 38A02-0301-CV-67 and obtained access to the letter). The *Rooker-Feldman* doctrine "precludes lower federal court jurisdiction over claims seeking review of state court judgments . . . [because] no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment." *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002) (internal citation omitted). While this jurisdictional doctrine does not apply where the plaintiff did not have a reasonable opportunity to raise his federal claim in state proceedings, *id.* at 667, a plaintiff cannot avoid its implications simply by "casting his complaint in the form of a civil rights action," or by adding claims of constitutional deprivations. *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993).

Though the Plaintiff's filings show that he received the letter sent by Berghoff to Judge Hutchison through a state court proceeding, it is not clear from the present record whether the state courts adjudicated the claims currently brought by the Plaintiff. The Defendant has not raised the issue, but determining the relevant history from the parties would require even more submissions and delay in the present case. In light of the summary judgment granted by this Order, the Court finds no harm in assuming that the present claims were not previously raised by the Plaintiff and determining the case on the record before it, as an alternative, if not seconday, ground for dismissal.

[7]As mentioned above, the Plaintiff conceded that his social security number was readily available to an involved party (Walters), and, in his response brief, he makes no effort to assert a substantive due process right in the security of that information.

Hutchison deprived him of a fair trial and violated his procedural due process rights. "[*E*]*x parte* communications most often become an issue if a judge communicates outside the courtroom without disclosing those communications to everyone involved. These communications are prohibited." *Worman Enters., Inc. v. Boone County Solid Waste Mgmt. Dist.*, 805 N.E.2d 369, 374–75  (Ind. 2004) (citing Ind. Judicial Conduct Canon 3(B)(8)). Here, the Plaintiff complains that the letter from Berghoff to Judge Hutchison biased the judge and constituted such a prohibited communication. Asserting that a prohibited communication occurred, though, is distinct from arguing that one has suffered a violation of procedural due process on account of this particular Defendant..

Due process "principally serves to protect the personal rights of litigants to a full and fair hearing . . . ." *Miller v. French* 530 U.S. 327, 350 (2000). Though the Plaintiff makes a general argument that the *ex parte* communication deprived him of this basic fairness, he does not articulate the Defendant's role or responsibility. The Plaintiff has created no issue of fact as to whether it was the Defendant's actions, rather than Berghoff's letter, that caused the asserted unfairness. Though the Plaintiff contends that the Defendant "allowed" Berghoff to contact the judge, Berghoff was fully capable of writing a letter to the judge directly, without the aid or influence of the Defendant. In fact, in his deposition the Plaintiff asserted his belief that Berghoff addressed the letter directly to the judge who then had it filed. (Pf.'s Dep. at 28–29.) In short, even if this Court assumes that the letter constituted an illicit *ex parte* communication during the state court proceeding, this action does not implicate the present Defendant. *See, e.g.*, *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 811 (7th Cir. 2000) ("[L]liability under § 1983 arises only when the plaintiff can show that the defendant was 'personally responsible for a deprivation of a constitutional right.'" ) (quoting *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir.1996))). The Plaintiff's speculations and vague assertions regarding the

role of the Defendant are insufficient to overcome summary judgment.

As the Plaintiff has not established the violation of a constitutional right, even assuming the Plaintiff's allegations, there is no necessity for further inquiries regarding qualified immunity. *Saucier*, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."). The Defendant is entitled to summary judgment on the Plaintiff's federal claims.

**D. Remand**

The Plaintiff's state claim for violation of Indiana Code § 5-2-9-7 is remanded to the Jay Superior Court where the suit originated. *See* 28 U.S.C. § 1367(c)(3) (granting district courts authority to decline to exercise supplemental jurisdiction and remand a case if the district court has dismissed all claims over which it has original jurisdiction); *Kircher v. Putnam Funds Trust*, 373 F.3d 847 (7th Cir. 2004) ("District courts should relinquish supplemental jurisdiction under certain circumstances remanding to state court if the suit originated there.").

**CONCLUSION**

For the foregoing reasons, the Plaintiff's Motion to amend his response [DE 75] is GRANTED. The Defendant's Motion to Strike [DE 63] is GRANTED in part and DENIED in part. The Defendant's Motion for Summary Judgment [DE 32] is GRANTED as to the federal claim. Pursuant to Federal Rule of Civil Procedure 54(b), the Court finds that there is no just reason for delay and the Clerk shall enter JUDGMENT for the Defendant and against the Plaintiff on the

Plaintiff's § 1983 federal claim. The state claim is REMANDED to the Jay Superior Court.

SO ORDERED on August 23, 2005.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT